UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MICHELLE CARVALHO,

        Plaintiff,

  -v-                                        No.  12 Civ. 128 (LTS)(FM)

BERNADINE STEVENS, et al.,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiff Michelle Carvalho ("Plaintiff" or "Carvalho"), brings this action pursuant to 42 U.S.C. § 1983, individually and on behalf of her minor child A.F.C., against Defendants Bernadine Stevens ("Stevens"), Valerie Romero ("Romero") and Officer John Doe ("Officer") (collectively, "Defendants").  Carvalho alleges that her constitutional rights were violated when Stevens, a Child Protection Specialist with the New York City Administration for Children's Services ("ACS"), removed A.F.C. from Carvalho's custody on October 6, 2010, and subsequently filed a charge of neglect against Carvalho in New York State Family Court.  On that same day, in connection with the removal of A.F.C., Carvalho was arrested by Officer John Doe on suspicion of criminal child abuse and, on October 12, 2010, Carvalho's elder daughter, Azzia, was also removed by court order.

Plaintiff asserts the following federal causes of action: false arrest (Count One); unreasonable seizure on behalf of A.F.C. (Count Two); violation of procedural due process (Count Three); violation of substantive due process (Count Four); and violation of equal protection (Count Five).  She also asserts two New York state law claims: false imprisonment

(Count Six); and intentional infliction of emotional distress (Count Seven).

Defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this action for failure to state a claim. The Court has reviewed thoroughly all of the parties' submissions and arguments and, for the following reasons, Defendants' motion is granted as to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims.

## BACKGROUND

In her complaint, Plaintiff alleges that Defendant Stevens fabricated a tale of abuse of A.F.C. by Plaintiff. Plaintiff claims that Stevens falsely reported to the police and to the state Family Court that A.F.C. had accused Plaintiff of beating her with a belt and injuring her finger and that, in fact, A.F.C. had told Stevens that Plaintiff had not abused her. Thus, according to Plaintiff, her arrest, the removal of A.F.C. from Plaintiff's custody, the subsequent removal of A.F.C.'s older sister from Plaintiff's custody, the Family Court's finding of emergency circumstances justifying the initial removal of A.F.C., and its ultimate finding of neglect, were all based upon lies and violated the constitutional rights of Plaintiff and A.F.C.

On a motion to dismiss such a complaint, the Court may take judicial notice of the state court proceedings without converting the motion to one for summary judgment. Evans v. New York Botanical Garden, 02 CIV 3591 RWS, 2002 WL 31002814 (S.D.N.Y. Sept. 4, 2002); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"). As explained in the "Discussion" section of this

Memorandum Order, the doctrine of collateral estoppel precludes relitigation of factual and legal issues that were necessarily decided in the earlier Family Court proceedings and are material to the claims raised in this later proceeding.

Here, the Family Court decided against Plaintiff core elements of the factual underpinnings of the claims asserted in the complaint. The following background summary is thus drawn from the complaint to the extent the complaint does not contradict the Family Court's findings, and from pertinent findings of the Family Court. Relevant procedural aspects of the record are also noted. On October 6, 2010, Stevens interviewed A.F.C. at the ACS office in response to a school social worker's report of suspected abuse. As Stevens later testified before the Family Court, Stevens observed that A.F.C. "had bruises on [both sides of] her neck . . . on the right arm, coming down the arm, on her [right] leg . . . [and that] her [right pinky] finger was swollen [and] bandaged up." (Carey Decl., Ex. J at 21.) When Stevens asked A.F.C. how she sustained the injuries, A.F.C. responded that "her mother beat her with a belt . . . [while the child was unclothed;] she tried to run in her room, her mother grabbed her by the neck, pushed her back on the bed and started beating her again." (Carey Decl., Ex. J at 20.) On the basis of this interview, ACS called Plaintiff in to the ACS office for questioning, which was conducted by Stevens and a police officer. According to Stevens, after initially protesting that she had only hit A.F.C. with her open hand, Plaintiff admitted to hitting A.F.C. with a belt.[1] (Carey Decl., Ex. J at 26.) Plaintiff was not permitted to speak with A.F.C. Plaintiff maintains that she had only spanked A.F.C. with her open hand, on a clothed portion of A.F.C.'s body, and that the incident arose from Plaintiff's reasonable and appropriate reaction to disobedient and dangerous conduct

---

[1] Stevens made substantially the same allegations in a written statement in support of removal petitions that were filed with the Family Court on October 12, 2011. (Carey Decl., Exs. B & C.)

on A.F.C.'s part.  Plaintiff further maintains that A.F.C. never told Stevens that Plaintiff had beaten her.  Plaintiff was arrested on October 6, 2010, on charges of child abuse[2] and, at Stevens' request, signed a form consenting to remand A.F.C. into ACS custody.  Plaintiff asserts that she signed the form under pressure, and only because Stevens told her that A.F.C. would be placed into the care of A.F.C.'s godmother.  Stevens took A.F.C. to Bellevue Hospital on October 8, 2010, for an examination. The medical examination report stated that A.F.C had bruises and marks "consistent with history of being punched and hit with a belt."  (Carey Decl., Ex. K at 9.)

On October 12, 2010, Stevens, on behalf of ACS, initiated neglect petitions against Plaintiff, seeking the continued removal of A.F.C. and the removal, based on derivative risk of neglect, of the older child, Azzia, as well.  (Carey Decl., Exs. C & D.)  By orders dated October 12, 2010, New York State Family Court Judge Rhoda Cohen (hereinafter the "Family Court") granted both petitions, finding based on Stevens' testimony that Plaintiff had hit A.F.C. with a belt, resulting in marks, bruises and a fractured finger, and that A.F.C. was afraid to return home.  Judge Cohen further found that it was reasonable and appropriate for ACS not to have made efforts prior to the hearing date to avoid A.F.C.'s removal because "the respondent [Carvalho] was incarcerated at time of removal and services could not be put in place."  (Carey Decl., Exs. E & F.)  Stevens requested that the children be placed with the godmother but the Family Court refused to do so prior to a background investigation and home inspection.  (Carey Decl., Ex. G.)  Both children, for whom a legal representative was appointed, were placed in foster care.

The Family Court held several pre-trial conferences and hearings between October 12, 2010, and February 28, 2011.  On February 28, 2011, Stevens testified and was

---

[2]   The criminal charges against Plaintiff were ultimately dropped.

cross-examined by counsel for Plaintiff and the law guardian appointed for A.F.C. and Azzia. The court then adjourned to give Plaintiff additional time to prepare her defense. At the final fact finding hearing on March 30, 2011, Plaintiff testified on her own behalf. Carvalho maintained, as she had throughout the proceedings, that she only ever hit A.F.C. with her open hand, and denied telling Stevens and the police officer that she had hit A.F.C. with a belt. At the conclusion of the March 30, 2011, hearing, the Family Court found that Carvalho had neglected A.F.C. In support of this finding, the Family Court made the following factual determinations:

> [I]t has been proven by a preponderance of the evidence that on October [5]th of 2010, the respondent mother inflicted excessive corporal punishment on her ten year old daughter, [A.F.C.], by beating her with a belt causing marks and bruises on the child's body and neck and when the child tried to run away, the mother grabbed her by the neck and pushed her back onto the bed.. . . I don't think the mother was not telling the truth but I think her testimony was not accurate and the testimony of the case worker and the hospital records clearly indicates that this child was beaten more than just spanked on the behind.

(Carey Decl., Ex. P at 39-40.)

While both A.F.C. and Azzia were returned to Plaintiff after the Family Court proceedings, Plaintiff nonetheless appealed the Family Court's finding to the New York State Supreme Court. The Appellate Division, First Department, affirmed the Family Court's determination of neglect, stating that:

> The out-of-court testimony of the child to the ACS caseworker was corroborated by the caseworker's observation of the child's injuries, the photographs depicting the child's injuries, and the child's medical-records related to the subject incident, which contained signed diagrams chronicling the location and/or size of the marks and bruises that were visible on the child's body approximately three days after the incident . . . No basis exists to disturb the court's credibility determinations.

(Carey Decl., Ex. T at 2.)

DISCUSSION

To survive a Rule 12(b)(6) motion, a complaint must "plead enough facts to state a claim that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citations omitted).

Plaintiff's claims are all premised on the allegation that Stevens fabricated the story of A.F.C.'s beating and knowingly initiated and maintained the Family Court proceedings based on false accusations. Defendants move to dismiss the complaint, arguing that, under the doctrine of collateral estoppel, Carvalho is precluded from litigating any claims that are inconsistent with the Family Court's factual and credibility determinations.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Federal courts are, furthermore, required to give preclusive effect to state court judgments. See 28 U.S.C. § 1738; Cameron v. Fogarty, 806 F.2d 380, 384 (2d Cir.1986). Under New York law, collateral estoppel will apply only if (1) the identical issue was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. Ryan v. New York

Tel. Co., 62 N.Y. 2d 494, 500–01 (1984). "Issues are considered identical [for collateral estoppel purposes] if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first." In re American Tobacco Co., 880 F.2d 1520, 1527 (2d Cir.1989) (internal quotations omitted).

Here, the Family Court expressly found that Plaintiff had beaten A.F.C. with a belt, causing physical injuries. That finding was necessary to the court's neglect determination. In making the finding, the Family Court determined that Plaintiff's testimony was inaccurate and that Stevens' testimony was credible. Specifically, the Family Court credited Stevens' testimony that, on October 6, 2010, A.F.C. told Stevens that she had been beaten with a belt, and that Stevens observed marks and bruises on the child's body that were consistent with that account. The Family Court's findings were subsequently upheld on appeal. Accordingly, Plaintiff is precluded from relitigating these factual propositions in federal court as well as from pursuing any legal claims that would require contrary factual findings. Because all of her federal claims depend upon such contrary factual propositions, collateral estoppel precludes Plaintiff from stating viable claims for relief in this court unless she can demonstrate that she was denied a full and fair opportunity to litigate the issues in the Family Court proceedings.

Plaintiff asserts that she was denied a full and fair opportunity to litigate the above issues in Family Court, because her counsel was ineffective and because she lacked sufficient incentive to litigate. The determination of whether a party had a full and fair opportunity to litigate is a holistic one, in which a court considers "the realities of the [prior] litigation including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." Ryan v. New York Tel. Co., 62 N.Y. 2d 494, 501 (N.Y. 1984) (internal

quotations omitted).  Specifically, courts look to "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation."  Id.

Plaintiff contends, inter alia, that her counsel in Family Court failed to make several court appearances, failed to call friends and neighbors to testify on Carvalho's behalf and failed to call A.F.C. to refute Stevens' testimony.  (Pl.'s Opposition p. 13.)  A review of the Family Court record reveals that most of these allegations are factually inaccurate.  Hearing transcripts indicate that counsel for Carvalho was present at all evidentiary proceedings (Carey Decl., Exs. G, H, I, J, O, & P); that when Carvalho's principal counsel was unable to appear at a hearing, her replacement was familiar with the case and advocated Plaintiff's interests with regard to custody and visitation (Carey Decl., Ex. H); that Plaintiff's counsel proffered friends and neighbors as witnesses but that the Family Court excluded their testimony as not probative of the question of neglect (Carey Decl., Ex. O); and that any testimony A.F.C. may have given was unlikely to affect the outcome of the case, as A.F.C. was, at all times, represented by a law guardian who recommended a finding of neglect (Carey Decl., Exs. J & P), and the physical evidence was consistent with the contention that A.F.C. had been beaten with a belt.  Plaintiff's counsel cross-examined Stevens at the March 30, 2011, fact finding hearing (Carey Decl., Ex. J), and Plaintiff testified on her own behalf at that hearing.  (Carey Decl., Ex. P.)

Thus, the errors that Plaintiff attributes to her counsel are either belied by the record or do not suggest that Plaintiff was prevented from presenting any evidence and arguments in the Family Court proceedings that might have turned the litigation in her favor. Even if Carvalho's allegations as to her counsel's performance were not largely contradicted by

the record, such allegations do not rise to the level of ineffectiveness that is indicative of denial of a full and fair opportunity to litigate.  See, e.g., Richards v. City of New York, 97 Civ. 7990 (MBM), 2003 WL 21036365 (S.D.N.Y. May 7, 2003) (no full and fair opportunity to litigate when plaintiff was entirely unable to testify at Family Court trial because she was on trial for murder in a concurrent proceeding); Velez v. Reynolds, 325 F. Supp. 2d 293, 310 (S.D.N.Y. 2004) (no full and fair opportunity to litigate when counsel "failed to take any action or make any argument whatsoever," refusing to participate in the fact finding hearing or to cross-examine witnesses).

Plaintiff also argues that she lacked adequate incentive to litigate the key factual issues because, "as a practical matter," it was understood that, regardless of the Family Court's ultimate finding regarding neglect, she would "get her kids back."  (Pl.'s Opposition p. 15.)  The Family Court record nonetheless clearly indicates that Carvalho did, in fact, litigate the issue of neglect, and maintained throughout the proceedings that she had never beaten A.F.C. with a belt. Furthermore, the fact that Carvalho appealed the Family Court's finding of neglect, despite having had both her children returned to her, demonstrates that she had incentive to litigate the finding of neglect, independent of the question of her children's custody.

The Court finds that, as a whole, the Family Court record strongly indicates that Carvalho had a full and fair opportunity to litigate.  Plaintiff has, thus, failed to satisfy her burden of demonstrating that she was denied such an opportunity.  Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 730 (2d Cir. 2001) ("the opponent [of collateral estoppel] bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue").  Accordingly, collateral estoppel precludes Carvalho from relitigating the issues of whether she beat A.F.C. with a belt; whether A.F.C. reported this beating to Stevens;

whether Stevens observed marks and bruises on A.F.C. consistent with such a beating; and whether medical records further corroborated the beating. Plaintiff's contradictory allegations in her complaint are therefore insufficient to state plausibly her causes of action. The Court's specific determinations as to each cause of action follow.

False Arrest (Count One)

Plaintiff alleges that her arrest on October 6, 2010, had no basis in fact and was unsupported by probable cause since "[a]t the time of the arrest, neither Stevens, Romero, nor Officer John Doe had information suggesting that the previous day's events involved anything other than an attempt to spank A.F.C. for her misbehavior." (Pl.'s Amended Complaint ¶ 42.) As explained above, this Court is bound by the Family Court's findings that, prior to Carvalho's arrest, A.F.C. had accused Plaintiff of beating her with a belt and that Stevens, a Child Protection Specialist, had observed marks consistent with such a beating on A.F.C.'s body. These facts are sufficient to demonstrate that the officer had probable cause to believe that Carvalho had abused A.F.C. Carvalho's false arrest claim is thus factually precluded.

Unreasonable Seizure (Count Two)

Plaintiff alleges, on behalf of her daughter A.F.C., that A.F.C.'s removal from her custody on October 6, 2010, was without probable cause or basis in fact. For substantially the reasons stated above, sustaining Carvalho's claim would require this Court to reject central factual findings of the Family Court. Collateral estoppel thus precludes Plaintiff's unreasonable seizure claim.

Procedural Due Process (Count Three)

Carvalho claims that Defendants, acting under color of state law, deprived her of the "care, custody and management of A.F.C. without valid consent and without a court order," thus violating her Fourteenth Amendment right to due process.  (Pl.'s Amended Complaint ¶ 51.)  In support of this claim, Plaintiff contends that, when A.F.C. was removed on October 6, 2010, there were no emergency circumstances, Carvalho had no history of child abuse, A.F.C. showed no signs of abuse, A.F.C. denied any abuse when questioned by ACS, there was ample time to acquire a court order for the initial removal, and that Defendants Stevens and Romero made repeated false statements in Family Court.  (Pl.'s Amended Complaint ¶ 52-3.)  Plaintiff is barred by the Family Court's factual and credibility determinations from relitigating her allegations that Stevens made false statements and that A.F.C. denied or showed no signs of abuse.  Furthermore, regardless of whether Carvalho's consent to A.F.C.'s initial removal was validly obtained, the Family Court, in its October 12, 2010, Order, found the removal reasonable and appropriate in light of Carvalho's arrest.  Emergency circumstances justify the removal of a child prior to a court hearing where the child would otherwise be bereft of care.  See Hurlman v. Rice, 927 F.2d 74, 81 (2d Cir.1991) (finding emergency circumstances when "the child is immediately threatened with harm, for example, where there exists an immediate threat to the safety of the child, or where the child is left bereft of care and supervision, or where there is evidence of serious ongoing abuse and the officials have reason to fear imminent recurrence") (internal citations and quotations omitted).  Carvalho, therefore, fails to state a viable claim for violation of procedural due process in connection with the initial removal.

Substantive Due Process (Count Four)

Plaintiff alleges that the removal of both of her children violated her right to substantive due process because Stevens obtained their removal based on false allegations and misrepresentations to the Family Court.  To establish a violation of substantive due process rights, "the interference with the plaintiff's protected right must be 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'"  Southerland v. City of New York, 680 F.3d 127, 151-52 (2d Cir. 2012), cert. denied, 133 S. Ct. 980, 184 L. Ed. 2d 773 (U.S. 2013) (quoting Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999).  Again, because she is precluded from challenging the credibility of Stevens' account, Carvalho has failed to state a claim on which relief can be granted.

Equal Protection (Count Five)

In her final federal claim, Carvalho alleges that Stevens had "no rational basis for seeking [Azzia's] removal" and that Stevens "acted out of malice toward Ms. Carvalho and in retaliation for Ms. Carvalho's questioning of her handling of the case." (Pl.'s Amended Complaint ¶ 61.)  Carvalho contends that Stevens treated her differently from similarly situated parents, violating her right to equal protection under the law.  The record is clear, however, that the Family Court ordered Azzia's removal based on A.F.C.'s statements to Stevens that her sister and mother had physically fought in the past and on the theory of derivative neglect.  ( Carey Decl., Ex. G at 10; Ex. F.)  As explained above, because Carvalho is precluded from relitigating the issue of Stevens' credibility or the Family Court's finding of neglect as to A.F.C., she fails to allege facts sufficient to plausibly claim that Stevens lacked a reasonable basis to seek removal of Azzia.  See Graham v. City of New York, No. 11 CV 5747, 2012 WL 2154257, at *12

(E.D.N.Y. June 14, 2012) ( "[I]n the case of a child protective investigation, the existence of a reasonable basis for the filing of a Family Court petition is sufficient to demonstrate that the government action would have been taken even in the absence of some retaliatory motive").

State Law False Imprisonment & Intentional Infliction of Emotional Distress Claims (Counts Six & Seven)

Having determined that Plaintiff has failed to state a claim in connection with any of her federal causes of action, this Court declines to exercise jurisdiction of Plaintiff's New York state law claims.  See, e.g., Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir.1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is granted.  Plaintiff's federal claims against all Defendants are dismissed with prejudice. The Court declines to exercise jurisdiction of the state law claims, which are dismissed without prejudice.  This Memorandum Order resolves docket entry no. 35.  The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

Dated: New York, New York
       July 17, 2013

                                        /S
                                    LAURA TAYLOR SWAIN
                                    United States District Judge